Nicomedes Sy Herrera (SBN 275332)
Laura E. Seidl (SBN 269891)
**HERRERA KENNEDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile: (855) 969-2050
Email: NHerrera@HerreraKennedy.com
 LSeidl@HerreraKennedy.com

Shawn Kennedy (SBN 218472)
Bret D. Hembd (SBN 272826)
**HERRERA KENNEDY LLP**
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Telephone: (949) 791-9700
Email: SKennedy@HerreraKennedy.com
 BHembd@HerreraKennedy.com

Tejinder Singh (*Pro Hac Vice*)
**GOLDSTEIN & RUSSELL, P.C.**
7475 Wisconsin Avenue, Suite 850
Bethesda, Maryland 20814
Telephone: (202) 362-0636
Email:   TSingh@GoldsteinRussell.com

Warren T. Burns (*Pro Hac Vice*)
Christopher J. Cormier (*Pro Hac Vice*)
Russell Herman (*Pro Hac Vice*)
Mallory Biblo (*Pro Hac Vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Email: WBurns@BurnsCharest.com
 CCormier@BurnsCharest.com
 RHerman@BurnsCharest.com
 MBiblo@BurnsCharest.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, | Case No.: 3:18-cv-03018-JCS |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| *ex rel.* ZACHARY SILBERSHER, | Chief Magistrate Judge Joseph C. Spero |
| Plaintiffs, | Case Management Conference Date: February 5, 2021 |
| v. | Time: 9:30 a.m. |
| ALLERGAN, INC., ALLERGAN USA, INC., ALLERGAN SALES, LLC, FOREST LABORATORIES HOLDINGS, LTD., ADAMAS PHARMA, AND ADAMAS PHARMACEUTICALS, INC., | Place: Courtroom G, 15th Floor Phillip Burton Federal Building 450 Golden Gate Avenue San Francisco, CA 94102 |
| Defendants. | Action Filed: April 25, 2018 |

1          Pursuant to the Court's December 11, 2020 Order, Dkt. 135, Plaintiff-Relator Zachary

2    Silbersher ("Relator"), on behalf of the United States of America and the Plaintiff States; and

3    Defendants Allergan, Inc., Allergan USA, Inc., and Allergan Sales, LLC, and Forest Laboratories

4    Holdings, Ltd. (collectively, "Allergan"); and Adamas Pharma, LLC and Adamas Pharmaceuticals,

5    Inc. (together, "Adamas") ("Allergan" and "Adamas" together, "Defendants") (Defendants with

6    Relator, the "Parties"), jointly file this Case Management Statement.[1]

7          Pursuant to Fed. R. Civ. P. 26(f), Relator met and conferred with the Defendants on

8    December 28, 2020 and again on January 7, 2021. The Parties now submit this Report pursuant to L.

9    Civ. R. 16-9(a). The Parties were able to reach agreement as to most issues. Any topic areas upon

10   which the Parties were unable to agree are addressed with separate statements from the Parties setting

11   forth their respective positions.

12   **1.      Jurisdiction and Service:**

13         **Relator's Statement:** As stated in Relator's First Amended Complaint (the "Complaint")

14   (Dkt. 12), the Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C.

15   § 1331 and 31 U.S.C. §§ 3730 & 3732. The Court has supplemental subject matter jurisdiction over

16   the state law claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b). The Court has personal

17   jurisdiction over each of the Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide

18   service of process. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and

19   31 U.S.C. § 3732(a) because Defendants can be found in and transact business in this District. Relator

20   has served all Defendants. Defendants have not challenged jurisdiction or venue.

21         **Defendants' Statement:** The Allergan Defendants waived and/or stipulated to the adequacy

22   of service of process. *See* Dkt. 31 at 2. Defendants do not challenge personal jurisdiction, venue, or

23   subject matter jurisdiction over the federal claims, but challenge subject matter jurisdiction over

24   Relator's state law claims.

25

26

27

---

28   [1] Allergan plc was originally named as a defendant but was dismissed pursuant to the stipulation of the
Parties and Court order. *See* Dkt. 93.

JOINT CASE MANAGEMENT STATEMENT                             CASE NO. 3:18-CV-03018-JCS

**2.      Facts:**

**Relator's Statement:** The Complaint alleges that Defendants committed fraud to cause the United States and Plaintiff States to pay substantially more for the drugs Namenda XR® (memantine) and Namzaric® (memantine and donepezil) than they would have otherwise paid. Specifically, the Complaint alleges that Defendants misled the Patent Office into issuing invalid patents protecting these drugs. They then submitted the invalid patents to be listed in the FDA's database of "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly known as the "Orange Book." Defendants were permitted to submit for listing only valid patents that "could reasonably be asserted" against generic competitors. *See* 21 U.S.C. § 355(b)(1). Defendants, however, knowingly submitted the fraudulent patents to the government for listing in the Orange Book to block generic competitors' entry into the market through drawn-out compulsory patent litigation resulting from the Orange Book listings.

Defendants' "fraudulent course of conduct" caused government programs to pay too much for the drugs, violating the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733; and the false claims act of the respective plaintiff States and the District of Columbia. Relator alleges that each and every claim for payment for Namenda XR and Namzaric reimbursed by or directly purchased by a government agency was a false claim for three reasons. *First*, under promissory fraud, Defendants caused claims for payment or reimbursement for Namenda XR and Namzaric to be submitted to the government at illegally inflated prices based on an upstream "original" fraud committed by Defendants. *Second*, under the implied false certification doctrine, Defendants are liable for misleading the government into believing that the prices offered to the market were not tainted by fraud but in fact were "fair and reasonable." *Third*, Defendants made factually false claims, because the applications for the fraudulent patents were themselves actionable false claims. This is because the patents were obtained through Defendants' misrepresentations and misleading omissions during the prosecution of the patent. A "claim" under the FCA includes any request for property—and patents are property. Thus, the patent applications were false claims, which proximately caused the government to suffer significant damages. 31 U.S.C. § 3729(a)(1)(A), (B).

JOINT CASE MANAGEMENT STATEMENT                                        CASE NO. 3:18-CV-03018-JCS

1    The total damages to the government likely exceed $2 billion, not counting treble damages,

2  statutory penalties, and statutory award of attorneys' fees.

3    **Allergan's Statement:** The two drugs at issue here are treatments for individuals with

4  dementia and Alzheimer's disease. The U.S. Food and Drug Administration ("FDA") initially

5  approved Namenda® in 2003; the version of the drug at issue in this case, Namenda XR®, is an

6  extended-release version of the drug approved by the FDA in June 2010. Dkt. 12 ¶¶ 50–51. Namzaric®,

7  which pairs the active ingredient in Namenda XR® with that in another Alzheimer's drug, was initially

8  approved by the FDA in 2014. *See id.* ¶ 108. The Complaint's two core allegations relate to patents

9  obtained in 2011 and 2012, when the Adamas Defendants and Forest Labs (one of the Allergan

10  Defendants), respectively, sought patents for new formulations and delivery methods for Namenda®.

11    Based on public patent prosecution files, as well as other public domain information such as

12  Securities and Exchange Commission ("SEC") reports and Medicare data, Relator brought this *qui*

13  *tam* action, advancing a convoluted theory with substantial factual holes. As to one group of patents

14  (the Went Patents), Relator will be unable to prove *any* conduct by Allergan before the U.S. Patent

15  and Trademark Office ("PTO"), as Allergan (through Forest Labs) only became involved *after* the

16  alleged misconduct. Relator alleges in the Complaint that Forest Labs entered into a license agreement

17  with Adamas in November 2012, *see* Dkt. 12 ¶ 58, *after* the purportedly fraudulent conduct by

18  Dr. Went and Adamas took place with respect to the patent prosecution, *see id.* ¶¶ 61, 63, 69–80.[2] As

19  to the remaining patent (the '009 patent), Relator will be unable to prove any facts that support a claim

20  of knowing misconduct by Forest Labs. He similarly does not plead, and will be unable to prove, any

21  facts sufficient to show the requisite intent by any Allergan Defendant in making any claims for

22  payments, or, in fact, any specific representation—express or implied—that was actually false in

23  connection with such claims.

24    Despite the publicly disclosed information regarding the allegations and transactions

25  underlying Relator's Complaint, federal and state health care programs continue to pay for

26  Namenda XR® and Namzaric®. Dkt. 12 ¶¶ 165, 175, 187.

27

28  [2] Allergan recognizes that the Court has accepted these allegations as sufficient at the pleading stage (Dkt. 135), but nonetheless contests whether Relator can prevail on a claim based on these facts.

JOINT CASE MANAGEMENT STATEMENT                                    CASE NO. 3:18-CV-03018-JCS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Adamas' Statement:** Adamas owns the so-called "Went Patents" relating to memantine, an active pharmaceutical ingredient in two Alzheimer's medications—Namenda XR® and Namzaric®— that Allergan markets and sells in the United States under an exclusive license from Adamas. Dkt. 12 ¶¶ 58–59. Allergan started selling Namenda XR in 2013, and Namzaric in 2015.

Relator filed this lawsuit in 2018. He is not a traditional FCA "insider" who alerts the government to unknown financial fraud. Instead, he is an outsider simultaneously litigating highly similar claims against numerous pharmaceutical companies, none of which ever employed him. In each case, he has pieced together allegations and transactions from publicly-available documents and databases in an effort to state an FCA claim. In the present action, Relator alleges Defendants caused various federal health care programs to receive allegedly "false" claims for Namenda XR and Namzaric from 2013 to present. Dkt. 12 ¶ 145. But he does not describe any particular reimbursement claim for these drugs, let alone identify one containing an expressly false statement or certification. Instead, Relator asserts that claims seeking government payment for Namenda XR and Namzaric are *impliedly* false because they fail to disclose Defendants' alleged noncompliance with assorted federal regulations. *Id.* ¶¶ 110–120. With respect to Adamas, Relator alleges the company breached its duty of candor to the PTO when procuring the Went Patents and, because enforcement of those patents "wrongfully" delayed generic competition, Allergan breached a purported obligation to provide "fair and reasonable" pricing for Namenda XR and Namzaric on the Federal Supply Schedule ("FSS"). *Id.* ¶¶ 57–90, 112–113.

Relator's allegations concerning Adamas are identical to meritless inequitable conduct claims that Amneal Pharmaceuticals LLC ("Amneal") filed in connection with patent infringement litigation back in 2014. Adamas disclosed these very same allegations to the United States through Information Disclosure Statements ("IDSs") submitted to the PTO in 2016. Adamas' IDSs included the Amneal inequitable conduct counterclaims as an attachment. Dkt. No. 68-1 is a chart placing Amneal's allegations side-by-side with the facts alleged in Relator's operative pleading, as well as numerous publicly available documents containing all of the essential facts underlying Amneal's allegations. The chart demonstrates starkly that Relator's allegations "mirror" Amneal's allegations, without adding any original content. *See* Dkt. 135 at 30–31. Every document referenced in Amneal's

- 4 -

1  allegations and Relator's Complaint has been publicly available to view and download from the PTO's

2  Patent Application Information Retrieval website ("Public PAIR") since at least 2013, five years

3  before Relator filed this lawsuit.

4         Adamas' IDS reports are available on Public PAIR as well, but their attachments—including

5  the Amneal counterclaims—are not. *See* Dkt. 135 at 31 n.11. To obtain certified copies of these

6  attachments, a member of the public need only submit a written request to the PTO's Public Records

7  Division. *See* PAIR FAQs, *available at* https://www.uspto.gov/patents-application-process/checking-

8  application-status/pair-faqs#. If Relator or any third party submitted a public records request covering

9  the attachments to Adamas's IDS reports before Relator filed his Complaint, those attachments were

10 likely "publicly disclosed" within the meaning of the FCA's public disclosure bar, 31 U.S.C. §

11 3730(e)(4). Adamas intends to explore this issue with Relator and, if necessary, the PTO if and when

12 this case proceeds to discovery.

13 **3.      Legal issues:**

14       **Relator's Statement:** On December 11, 2020, the Court denied Defendants' motions to

15 dismiss the Complaint. Dkt. 135. On December 30, 2020, Defendants filed a motion to have the Court

16 certify its Order denying its motion to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b) and

17 to stay the case pending the resolution of such appeal, or in the alternative, to stay this case pending

18 the Ninth Circuit's decisions in *United States ex rel. Silbersher v. Valeant Pharmaceuticals*

19 *International, Inc.*, and *United States ex rel. Integra Medical Analytics LLC v. Providence Health &*

20 *Services*. Interlocutory appeal is to be "applied sparingly and only in exceptional cases." *In re Cement*

21 *Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982). Use of immediate interlocutory appeals is

22 reserved for "extraordinary cases," and is "not intended merely to provide review of difficult rulings

23 in hard cases." *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir.1966), Relator believes

24 Defendants have failed to meet their burden of establishing that this is an "extraordinary" case that

25 warrants interlocutory review, and the Court should accordingly exercise its discretion to deny the

26 motion to certify for the reasons to be set forth in Relator's opposition brief.

27       Relator does not believe there are any other legal issues to resolve at this time and intends to

28 vigorously prosecute this matter according to the proposed schedule set forth below.

JOINT CASE MANAGEMENT STATEMENT                                    CASE NO. 3:18-CV-03018-JCS

1   **Defendants' Statement:** Because Relator's claims stem from publicly reported information

2   and he is not an original source, the FCA's public disclosure bar may dispose of his case if the Ninth

3   Circuit were to reverse this Court's interpretation of the bar's scope. Accordingly, Defendants have

4   petitioned the Court to certify its Order denying Defendants' motions to dismiss (Dkt. 135) for

5   interlocutory review under 28 U.S.C. § 1292(b). *See* Defendants' Notice of Motion and Motion to

6   Certify Order for Immediate Appeal and for Stay; Memorandum of Points and Authorities, Dkt. 136

7   ("Motion to Certify").

8   The questions identified in the Motion to Certify are "controlling question[s] of law as to which

9   there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). An immediate appeal could

10  eliminate potential waste and inefficiency by avoiding protracted and expensive, but ultimately

11  unnecessary, litigation, including by narrowing the issues to be addressed in this action, if not

12  resolving the case entirely. Defendants have also asked the Court to exercise its discretion under

13  28 U.S.C. § 1292(b) to stay this case pending the Ninth Circuit's resolution of Defendants' appeal,

14  should this Court agree to certify the Motion to Dismiss Order. Alternatively, even if this Court decides

15  not to certify its Order or the Ninth Circuit decides not to hear an interlocutory appeal, a stay is

16  appropriate pending the Ninth Circuit's forthcoming decisions in the *Valeant* and *Integra* cases, for

17  the reasons set forth in the Motion to Certify.

18  **4.    Motions:**

19  Allergan filed a motion to dismiss (Dkt. 63) and request for judicial notice (Dkt. 66) on June

20  14, 2019. Adamas filed a motion to dismiss (Dkt. 68) and request for judicial notice (Dkt. 70) on June

21  21, 2019. The Court denied the motions to dismiss on December 11, 2020. Dkt. 135.

22  Defendants filed their Motion to Certify (Dkt. 136) on December 30, 2020, and briefing will

23  be completed by the end of January 2021.

24  **5.    Amendment of Pleadings:**

25  Relator does not anticipate a need to amend the pleadings.

26  **6.    Evidence Preservation:**

27  The Parties have reviewed the Northern District's Guidelines Relating to the Discovery of

28  Electronically Stored Information ("ESI Guidelines"). The Parties have met and conferred pursuant to

- 6 -

1   Rule 26(f) to discuss reasonable and proportional steps to preserve relevant evidence. Specifically,

2   Relator inquired whether Defendants were aware of any issues regarding evidence that has either not

3   been preserved or is inaccessible. Defendants stated that they are not aware of any such issues.

4   Defendants stated that they had initiated litigation holds. Relator also confirmed that he is preserving

5   all relevant documents, including all documents and correspondence demonstrating that he has

6   knowledge that is independent of and materially adds to public information regarding the allegations

7   and transactions underlying his claims.

8          Relator emphasized that, due to the nature of the claims, information dating back several years

9   relating to certain topic areas would need to be preserved, including, without limitation, documents

10  relating to: (a) the underlying patent applications; (b) the studies, data, and other prior art referenced

11  in the patent applications, including, without limitation, the M110 and C106 studies; and (c) internal

12  company documents concerning generic defense and revenue erosion analyses relating to Namenda

13  XR (and its predecessor drug, Namenda IR) and Namzaric.

14  **7.     Disclosures:**

15        The Parties exchanged Rule 26 initial disclosures on October 18, 2019.

16  **8.     Discovery:**

17        **Relator's Statement:** Relator served his First Requests for Production of Documents on

18  Defendants on December 6, 2019.

19        To make the proceedings more efficient, Relator has proposed that Defendants begin a rolling

20  document production beginning March 1, 2021 focusing on those documents previously produced by

21  the parties in prior infringement actions relating to the patents that the Complaint alleges were

22  fraudulently obtained by Defendants. This targeted set of documents is plainly relevant and would not

23  be unduly burdensome to produce. It should therefore be produced without delay.

24        Relator's proposed rolling production would permit Plaintiff immediately to commence

25  targeted review of relevant documents that have already been produced in prior litigation while

26  permitting the parties additional time to meet and confer on ESI search terms and other matters relating

27  to electronic discovery concerning Relator's remaining document requests.

28

- 7 -

1   To further the efficient and expeditious resolution of this action pursuant to Fed. R. Civ. P. 1,

2   Relator also provided Defendants on December 26, 2020 with draft: (a) Stipulation and [Proposed]

3   Order Regarding Discovery of Electronically Stored Information (ESI); (b) Stipulation and [Proposed]

4   Order Regarding Expert Discovery Protocols; (c) Stipulation and [Proposed] Order Regarding

5   Privilege Protocols; and (d) Stipulation and [Proposed] Protective Order. Relator requested that the

6   parties confer in good faith to present the proposed stipulations and proposed orders to the Court on

7   or soon after the first CMC.

8   The Parties have engaged in initial discussions regarding the draft stipulations and orders listed

9   above and will confer in good faith regarding those documents.

10   Defendants have filed a motion for the Court to certify this case for interlocutory appeal or to

11   stay this case. During oral argument on Defendants' motion to dismiss, the Court stated that "If I deny

12   the motion, then I'll open discovery and we'll set a schedule and get it all done." (Dkt. 116, at 56, lines

13   18-19). Interlocutory appeals are reserved for exceptional cases, and the Ninth Circuit often refuses to

14   hear interlocutory appeals even when the District Court certifies its decision. Here, the Court's

15   decision and order denying Defendants' motions to dismiss is manifestly correct, and there is no good

16   reason to further delay the expeditious progress of this action. Consistent with the requirement under

17   Fed. R. Civ. P. 1 for the rules to construed to "secure the just, speedy, and inexpensive determination

18   of every action and proceeding," the Court should permit this action to move forward expeditiously

19   without further delay.

20   **Defendants' Statement:** As explained in their Motion to Certify, Defendants believe that the

21   Court should stay this action (1) pending the Ninth Circuit's resolution of Defendants' appeal, should

22   the Court agree to certify its Motion to Dismiss Order as requested in that motion, or alternatively

23   (2) pending the Ninth Circuit's forthcoming decisions in *Valeant* and *Integra*. This Court previously

24   stayed discovery in this case pending resolution of the motion to dismiss under the public disclosure

25   bar. Dkt. 111. The same reasons that warranted a stay of discovery pending resolution of the motion

26   to dismiss apply equally now, because resolution of the public disclosure bar issue could obviate the

27   need for any discovery in this case whatsoever. This is especially critical because, as discussed further

28   below, the Parties are likely to seek significant discovery from multiple agencies of the U.S.

- 8 -

1   government, which declined to intervene in Relator's Complaint almost two years ago. Dkt. 7.

2   **9.      Class Actions:**

3         There are no class allegations in this case.

4   **10.     Related Cases:**

5         Although these cases are not strictly speaking related, Relator is a plaintiff and relator in two

6   other unsealed cases against other pharmaceutical manufacturers that Relator alleges also fraudulently

7   obtained patents to exclude generic competition with respect to two other drugs. *See United States* ex

8   rel. *Silbersher v. Janssen Biotech, Inc. et al.*, No. 2:19-cv-12107-KM-JBC (D.N.J.) (relating to the

9   prostate cancer drug Zytiga®, and originally filed in this District but since transferred); and *United*

10  *States* ex rel. *Silbersher v. Valeant Pharms. Int'l, Inc.,* No. 3:18-cv-01496-JD (N.D. Cal.) (relating to

11  Apriso®, prescribed to treat ulcerative colitis). The *Janssen* case in New Jersey is being coordinated

12  with five antitrust class actions that were filed soon after the *qui tam* action was unsealed alleging

13  anticompetitive overcharges to private payors based on the same alleged underlying misconduct

14  Relator alleges in the *qui tam* complaint, *i.e.,* the unlawful exclusion of generic competitors through

15  the assertion of a fraudulently-obtained patent.[3] Judge Donato of this District concluded that the public

16  disclosure bar precluded Relator's suit against Valeant, *see* 445 F. Supp. 3d 393 (N.D. Cal. 2020), and

17  the appeal is pending before the Ninth Circuit, *see* 9th Cir. No. 20-16176.

18  **11.     Relief:**

19        **Relator's Statement:** Relator seeks damages on behalf of the federal government and the

20  Plaintiff States for overcharges paid for Namenda XR from at least July 2014 through at least February

21  2018 (with some damages continuing to the present); and Namzaric from July 2015 to the present.

22  CMS reports that Medicare Part D and Medicaid paid a total of $3.122 billion from July 2014 to

23  December 31, 2017 (the last date data is available) for Namenda XR and Namzaric based on over 8.5

24

---

25  [3] Five antitrust class actions based on the same transactions underlying the *Janssen qui tam* were filed
    soon after *Janssen* was unsealed. Those class actions have all been transferred to the District of New
26  Jersey. Four of those cases—filed on behalf of the City of Baltimore, Blue Cross / Blue Shield of
    Louisiana, and various union health plans—have been consolidated into civil action No. 2:19-cv-
27  14146-KM-JBC (D.N.J.). A fifth antitrust action, filed by the Self-Insured Schools of California based
    on the same misconduct alleged in the *Janssen* complaint, is pending as civil action No. 2:19-cv-
28  14291-KM-JBC (D.N.J.) and has recently been consolidated with the *Blue Cross* action.

JOINT CASE MANAGEMENT STATEMENT                    CASE NO. 3:18-CV-03018-JCS

million separate claims. These amounts do not include direct purchases of Namenda XR and Namzaric through government programs such as the Veterans Health Administration or the Department of Defense's TRICARE; or reimbursements from other parts of Medicare, such as Medicare Advantage (Part C).

Thus, damages for fraudulent claims made to Medicare Part D and Medicaid—excluding purchases after January 1, 2018—is approximately $2.8 billion, before trebling and statutory penalties. The FCA also authorizes a civil penalty of not less than $11,463, or more than $22,927, for each violation of the FCA.

**Defendants' Statement:** Defendants contend that Relator is not entitled to any relief. In the event of a finding of liability, Defendants assert that damages should be limited to (at most) the claims actually and proximately caused by the conduct found to violate the FCA and any associated incremental cost to the government (rather than the full cost of the drugs at issue). Similarly, any such damages must be reduced to account for the value obtained by the government in reimbursing the specific claims for the drugs at issue. Such adjustments must be made before any statutory trebling under the FCA and state analogues. Additionally, trebling and per-claim penalties may raise due process, Eighth Amendment, and other constitutional considerations. All damages must be established based on an appropriate methodology and proof.

**12.    Settlement and ADR:**

During the meet and confer Relator informed Defendants that mediation before a magistrate is acceptable, as are the other ADR options offered by the Court. Defendants are agreeable to mediation in front of a magistrate, although they believe ADR is premature at this time, and would prefer to revisit the issue after the Court has ruled on the Motion to Certify.

**13.    Consent to Magistrate Judge for All Purposes:**

All parties have consented to have Chief Magistrate Judge Spero preside over this action for all purposes.

**14.    Other References:**

Inapplicable.

JOINT CASE MANAGEMENT STATEMENT                                        CASE NO. 3:18-CV-03018-JCS

1  **15.    Narrowing of Issues:**

2  The Parties do not believe the issues can be narrowed at this stage.

3  **16.    Expedited Trial Procedure:**

4  No Party seeks to proceed under the Court's Expedited Trial Procedure.

5  **17.    Scheduling:**

6  **Relator's Statement:** The Parties have met and conferred about a potential pretrial schedule.

7  As set forth below, Relator proposes a schedule that would allow trial to proceed in 18 months.

8  Relator believes that many issues on patent validity have already been litigated and subject to

9  extensive discovery in prior infringement actions, and therefore any discovery burden on Defendants

10 is greatly diminished in this case.

11 **Defendants' Statement:** Defendants have moved the Court to certify its Order on Defendants'

12 respective motions to dismiss under 28 U.S.C. § 1292(b) and stay proceedings pending the Ninth

13 Circuit's resolution of Defendants' appeal, should the Court agree to certify an interlocutory appeal

14 and the Ninth Circuit agree to hear that appeal, or alternatively to stay proceedings pending the Ninth

15 Circuit's forthcoming decisions in *Valeant* and *Integra*. Defendants therefore believe that the schedule

16 set forth below should commence, if necessary, only upon resolution of those issues. Relator opposes

17 any stay.

18 Defendants also believe that Relator's proposed schedule is too condensed to facilitate

19 completion of reasonable discovery and other pretrial proceedings given the factual complexity of the

20 issues presented by this case. This case will require litigation of factual and legal issues extending across

21 at least three complex areas of law, as the underlying conduct involves patent issues, while Relator's

22 claims are based on antitrust and unfair competition concepts and his causes of action arise under the

23 FCA and related state laws. As pleaded, this case involves events that took place in connection with the

24 prosecution of 13 patents, and Relator has stated his position that discovery should extend back to

25 January 1, 2004. Further, as pleaded, this case will require discovery from multiple agencies of

26 government, including, at a minimum, securing information from the PTO and claims data and other

27 information from the Centers for Medicare & Medicaid Services and the agencies administering the

28 Children's Health Insurance Program, the Indian Health Service, the Federal Bureau of Prisons' Health

- 11 -

1   Services Division, the Veterans Health Administration, the Military Health System, CHAMPUS,

2   TRICARE, and the Coast Guard's Office of Health Services. In Defendants' experience, it will take a

3   significant amount of time to obtain discovery from these government agencies, yet such discovery will

4   be necessary before the Parties can complete all required depositions and expert submissions.

5          In addition to needing more time for discovery, in light of the enormous complexity of trying an

6   unprecedented case of this nature, Defendants also believe that pretrial deadlines should be scheduled

7   for dates after a decision on the Rule 56 motion for summary judgment. Given the legal issues posed by

8   Relator's novel claims, preparing for trial while the Parties await the Court's ruling on those issues

9   would be inefficient.

10         Notwithstanding disagreements about whether the case should be stayed, the time period for fact

11  discovery, and other pretrial scheduling questions and deadlines, the Parties have worked together to

12  develop the proposed schedule outlined below, which reflects some areas of common ground resulting

13  from the Parties' discussions while highlighting for the Court where the Parties' positions diverge.

| EVENT | RELATOR'S PROPOSAL | DEFENDANTS' PROPOSAL |
|---|---|---|
| Case Management Conference | February 5, 2021 | |
| Defendants answer the Complaint | March 4, 2021 | 45 days following Court's entry of a scheduling order[4] |
| Parties exchange proposed custodians/search terms | March 1, 2021 | 45 days following Court's entry of a scheduling order |
| Parties begin rolling document productions | March 1, 2021 | 60 days following Court's entry of a scheduling order |
| Deadline to amend pleadings or to add defendants, claims, or defenses, except upon a showing of good cause | April 19, 2021 | |

[4] The Parties have stipulated to extend the time for Defendants to answer the Complaint until March 4, 2021. Defendants maintain however, consistent with their pending motion for certification and for stay, ECF 136, that further proceedings in the district court at this juncture—such as pleadings responsive to Relator's 551-paragraph Complaint—may prove to be wasteful and unnecessary. Defendants therefore respectfully ask the Court to postpone the deadline to answer until a reasonable period of time following entry of a scheduling order, should that occur.

JOINT CASE MANAGEMENT STATEMENT                                    CASE NO. 3:18-CV-03018-JCS

| EVENT | RELATOR'S PROPOSAL | DEFENDANTS' PROPOSAL |
|---|---|---|
| Fact discovery closes, including all fact depositions; all discovery must have been timely served to be answerable by this date | 180 days following the date that Defendants' Answers to the Complaint are due (or August 31, 2021) Deadline for substantial completion of document production: 84 days after defendants begin rolling production (or May 24, 2021) | 270 days following the date that Defendants' Answers to the Operative Complaint are due Defendants disagree that the Court should set a deadline for completion of document production in light of the uncertain number of custodians, search terms, and document volumes |
| The Parties serve merits expert reports | 37 days following the close of fact discovery (or October 7, 2021) | 37 days following the close of fact discovery |
| The Parties serve opposing/rebuttal merits expert reports | 30 days following service of merits expert report (or November 8, 2021) | 30 days following service of merits expert report |
| The Parties serve reply merits expert reports | 28 days following service of opposing merits expert reports (or December 6, 2021) | 28 days following service of opposing merits expert reports |
| Expert discovery closes | 14 days following service of reply merits expert reports (or December 20, 2021) | 14 days following service of reply merits expert reports |
| Deadline for Rule 56 and Daubert motions | 30 days following service of reply merits expert reports (or January 5, 2022) | 30 days following service of reply merits expert reports |
| Rule 56 and Daubert oppositions | 28 days following deadline for Rule 56 and Daubert motions (or February 2, 2022) | 28 days following deadline for Rule 56 and Daubert motions |
| Rule 56 and Daubert replies | 14 days following Rule 56 and Daubert oppositions (or February 16, 2022) | 14 days following Rule 56 and Daubert oppositions |

- 13 -

| EVENT | RELATOR'S PROPOSAL | DEFENDANTS' PROPOSAL |
|---|---|---|
| Hearing on Rule 56 and Daubert motions | 42-day window starting 21 days following the Rule 56 and Daubert replies<br><br>(or March 9, 2022 through April 20, 2022) | To be set by Court |
| Parties exchange Rule 26(a)(3) disclosures and preliminary trial memoranda | 35 days following Rule 56 and Daubert replies<br><br>(or March 23, 2022) | 35 days following the Court's ruling on Rule 56 motions |
| Parties file motions *in limine* | 35 days following Rule 56 and Daubert replies<br><br>(or March 23, 2022) | 35 days following the Court's ruling on Rule 56 motions |
| Parties file oppositions to motions *in limine* | 10 days following the filing of motions *in limine*<br><br>(or April 4, 2022) | 10 days following the filing of motions *in limine* |
| Parties exchange objections to Rule 26(a)(3) disclosures | 7 days following filing of oppositions to motions *in limine*<br><br>(or April 11, 2022) | 7 days following filing of oppositions to motions *in limine* |
| Parties exchange counter-objections to Rule 26(a)(3) disclosures | 3 days following exchange of objections to Rule 26(a)(3) disclosures<br><br>(or April 14, 2022) | 3 days following exchange of objections to Rule 26(a)(3) disclosures |
| Parties file replies to motions *in limine* | 3 days following exchange of objections to Rule 26(a)(3) disclosures<br><br>(or April 18, 2022) | 3 days following exchange of objections to Rule 26(a)(3) disclosures |
| Attorneys' Conference; all motions *in limine* must be fully briefed by this date. | 4 days following filing of replies to motions *in limine*<br><br>(or April 22, 2022) | 4 days following filing of replies to motions *in limine* |
| Draft of Joint Final Pretrial Order, *voir dire*, and jury instructions exchanged | 21 days following Attorneys' Conference<br><br>(or May 13, 2022) | 21 days following Attorneys' Conference |
| Joint Final Pretrial Order filed with Court | 5 days following Draft of Joint Final Pretrial Order<br><br>(or May 18, 2022) | 5 days following Draft of Joint Final Pretrial Order |

- 14 -

| EVENT | RELATOR'S PROPOSAL | DEFENDANTS' PROPOSAL |
|---|---|---|
| First Final Pretrial Conference (proposed) | 2 days following filing of Joint Pretrial Order with Court<br><br>(or May 20, 2022) | 2 days following filing of Joint Pretrial Order with Court |
| Parties file proposed *voir dire*, jury instructions, original and two copies of final bound exhibits, revised 26(a)(3)/Final Pretrial Order materials, witness summaries, and Final Trial Memoranda | 21 days following First Final Pretrial Conference<br><br>(or June 10, 2022) | 21 days following First Final Pretrial Conference |
| Second Final Pretrial Conference<br><br>(proposed) | 7 days following filing of proposed *voir dire*<br><br>(or June 17, 2022) | 7 days following filing of proposed *voir dire* |
| Trial | Approx. 30 days after Second Final Pretrial Conference<br><br>(or July 18, 2022) | Approx. 30 days after Second Final Pretrial Conference |

**18.     Trial:**

Defendants prefer a bench trial. Relator is amenable to a bench trial but reserves his right to request a jury trial. No other trial-related issues were discussed.

**19.     Disclosure of Non-party Interested Entities or Persons:**

The Parties have filed Certifications of Interested Entities or Persons with the Court, and restate their contents as follows:

Relator: None.

Allergan: (1) Allergan Holdco US, Inc. (partial owner of Allergan Sales, LLC); (2) Allergan Holdings, Inc. (partial owner Allergan Sales, LLC).

Adamas: Not applicable.

**20.     Professional Conduct:**

The attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other Matters:**

None.

JOINT CASE MANAGEMENT STATEMENT                    CASE NO. 3:18-CV-03018-JCS

Dated: January 8, 2021

**HERRERA KENNEDY LLP**

By:      */s/ Nicomedes Sy Herrera*
         Nicomedes Sy Herrera

Nicomedes Sy Herrera (State Bar No. 275332)
Laura E. Seidl (State Bar No. 269891)
**HERRERA KENNEDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Email: NHerrera@HerreraKennedy.com
        MWeiler@HerreraKennedy.com
        LSeidl@HerreraKennedy.com

Shawn Kennedy (State Bar No. 218472)
Bret D. Hembd (State Bar No. 272826)
**HERRERA KENNEDY LLP**
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Email: SKennedy@HerreraKennedy.com
        BHembd@HerreraKennedy.com

Tejinder Singh (*Pro Hac Vice*)
**GOLDSTEIN & RUSSELL, P.C.**
7475 Wisconsin Avenue, Suite 850
Bethesda, Maryland 20814
Telephone: (202) 362-0636
Email: TSingh@GoldsteinRussell.com

Warren T. Burns (*Pro Hac Vice*)
Russell Herman (*Pro Hac Vice*)
Mallory Biblo (*Pro Hac Vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Email: WBurns@BurnsCharest.com
        RHerman@BurnsCharest.com
        MBiblo@BurnsCharest.com

Christopher J. Cormier (*Pro Hac Vice*)
**BURNS CHAREST LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 577-3977
Email: CCormier@BurnsCharest.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

- 16 -

Dated: January 8, 2021

**KIRKLAND & ELLIS**

By:     /s/ *M. Sean Royall*
          M. Sean Royall

M. Sean Royall (*pro hac vice*)
Olivia Adendorff (*pro hac vice*)
**KIRKLAND & ELLIS**
1601 Elm Street
Dallas, TX 75201-6912
Telephone:  214.972.1770
Facsimile:   214.571.2900
Email: sean.royall@kirkland.com
          Olivia.adendorff@kirkland.com

**GIBSON, DUNN & CRUTCHER LLP**

By:     /s/ *John D.W. Partridge*
          John D.W. Partridge

John D. W. Partridge (State Bar No. 255570)
**GIBSON, DUNN & CRUTCHER LLP**
1801 California St.
Suite 4200
Denver, CO 80202-2642
Telephone:  303.298.5700
Facsimile:   303.298.5907
Email: jpartridge@gibsondunn.com

Emma M. Strong (State Bar No. 313496)
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5338
Facsimile:   650.849.5038
Email: estrong@gibsondunn.com

*Attorneys for Allergan Defendants*

**DLA PIPER LLP (US)**

By:     /s/ *Andrew J. Hoffman II*
          Andrew J. Hoffman II

Andrew J. Hoffman II (Bar No. 259507)
andrew.hoffman@dlapiper.com
Colleen M. McElroy (Bar No. 307490)
colleen.mcelroy@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel:   310.595.3000
Fax:   310.595.3300

- 17 -

1

2

3

4

Matthew Holian (Bar No. 211728)
matt.holian@dlapiper.com
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel:   617.406.6000
Fax:   617.406.6100

5

6

7

8

Lisa Tenorio-Kutzkey (Bar No. 205955)
ltk@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel:   415.836.2500
Fax:   415.836.2501

9

*Attorneys for Adamas Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

1

**ATTESTATION OF FILER**

2

   I, Nicomedes Sy Herrera, attest that I have obtained the concurrence Defendants' counsel as

3

to the substance of this **JOINT CASE MANAGEMENT STATEMENT**. Messrs. Royall and

4

Holian have authorized the use of their electronic signatures on this document.

5

6

Dated: January 8, 2021          By: */s/ Nicomedes Sy Herrera*
                 Nicomedes Sy Herrera

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -

JOINT CASE MANAGEMENT STATEMENT            CASE NO. 3:18-CV-03018-JCS