Nicomedes Sy Herrera (SBN 275332)
Laura E. Seidl (SBN 269891)
**HERRERA KENNEDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Facsimile: (855) 969-2050
Email: NHerrera@HerreraKennedy.com
        LSeidl@HerreraKennedy.com

Shawn Kennedy (SBN 218472)
Bret D. Hembd (SBN 272826)
**HERRERA KENNEDY LLP**
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Telephone: (949) 936-0900
Email: SKennedy@HerreraKennedy.com
        BHembd@HerreraKennedy.com

Tejinder Singh (*Pro Hac Vice*)
**GOLDSTEIN & RUSSELL, P.C.**
7475 Wisconsin Avenue, Suite 850
Bethesda, Maryland 20814
Telephone: (202) 362-0636
Email:   TSingh@GoldsteinRussell.com

Warren T. Burns (*Pro Hac Vice*)
Christopher J. Cormier (*Pro Hac Vice*)
Russell Herman (*Pro Hac Vice*)
Mallory Biblo (*Pro Hac Vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Email: WBurns@BurnsCharest.com
        CCormier@BurnsCharest.com
        RHerman@BurnsCharest.com
        MBiblo@BurnsCharest.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA; STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, AND WASHINGTON; THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA; AND THE DISTRICT OF COLUMBIA, <br><br> *ex rel.* ZACHARY SILBERSHER, <br><br> Plaintiffs, <br><br> v. <br><br> ALLERGAN, INC., ALLERGAN USA, INC., ALLERGAN SALES, LLC, FOREST LABORATORIES HOLDINGS, LTD., ADAMAS PHARMA, AND ADAMAS PHARMACEUTICALS, INC., <br><br> Defendants. | Case No.: 3:18-cv-03018-JCS <br><br> **PLAINTIFF-RELATOR ZACHARY SILBERSHER'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR IMMEDIATE APPEAL AND FOR STAY (DKT. 136)** <br><br> Chief Magistrate Judge Joseph C. Spero <br><br> Hearing Date: February 5, 2021 <br> Time: 9:30 a.m. <br><br> Courtroom G, 15th Floor <br> Phillip Burton Federal Building <br> 450 Golden Gate Avenue <br> San Francisco, CA 94102 <br><br> Action Filed: May 22, 2018 |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................3

III.  ARGUMENT .........................................................................................................5

      A. The Court Should Decline to Certify the Order for Interlocutory Appeal....................................5

         1. Interlocutory Appeal Is Reserved for Rare Circumstances........................................5

         2. The Public Disclosure Issues are not Controlling Questions of Law .........................6

         3. Defendants Have Failed to Establish Substantial Ground for Difference of Opinion as to the Public Disclosure Bar ..................................................................7

         4. Defendants Have Failed to Establish That Interlocutory Review of the Order Will Materially Advance the Ultimate Termination of this Litigation .........................................10

      B. The Court Should Decline to Stay This Action Pending an Interlocutory Appeal ....................12

      C. The Court Should Decline to Stay This Action Pending the Resolution of the Ninth Circuit Appeals in the *Valeant* and *Integra* Cases ...................................................14

IV.   CONCLUSION......................................................................................................16

TABLE OF AUTHORITIES

CASES

*Allen v. ConAgra Foods, Inc.*, 2019 WL 1466889 (N.D. Cal. Feb. 6, 2019) ...........................................13

*Ambrosio v. Cogent Commc'ns, Inc.*, 2016 WL 777775 (N.D. Cal. Feb. 29, 2016) ...............................13

*Andrews v. Plains All Am. Pipeline, L.P.*, 2017 WL 9831401 (C.D. Cal. Nov. 7, 2017).....................12

*Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695 (N.D. Cal. Sept. 16, 2008)...............17

*Beeman v. Anthem Prescription Mgmt., Inc.*, 2007 WL 8433884 (C.D. Cal. Aug. 2, 2007) .................12

*Brizzee v. Fred Meyer Stores, Inc.*, 2008 WL 426510 (D. Or. Feb. 13, 2008) .........................................7

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962).............................................................................18, 19

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978)...............................................................................7

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) ..........................................................................8, 9

*DeLuca v. Farmers Ins. Exch.*, 2019 WL 4260437 (N.D. Cal. Sept. 9, 2019) ....................................9, 12

*Exec. Software North Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
    24 F.3d 1545 (9th Cir. 2008)...........................................................................................................7

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4397175 (C.D. Cal. June 8, 2015).....................16

*Heaton v. Soc. Fin., Inc.*, 2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ....................................................7

*In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1981) ....................................................................6

*In re Namenda IR Antitrust Litig.*, 1:15-cv-07488-CM (S.D.N.Y.).................................................14, 17

*In re: Restasis Antitrust Litigation*, Case No. 1:18-md-02819 (E.D.N.Y.) .............................................14

*James v. Price Stern Sloan, Inc.*, 283 F.3d 1064 (9th Cir. 2002) ....................................................1, 6, 7

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936)............................................................................................18

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ............................................................................15

*Nken v. Holder*, 556 U.S. 418 (2009).....................................................................................................15

*Phan v. Transamerica Premier Life Ins. Co.*, 2020 WL 5576358 (N.D. Cal. Sept. 17, 2020)..........18, 19

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011)................................................................8

*Schindler Elevator Corp. v. U.S.* ex rel. *Kirk*, 563 U.S. 401 (2011)....................................................4, 9

*Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347 (9th Cir. 1988)...............................................13

*Spears v. Wash. Mut. Bk. FA*, 2010 WL 54755 (N.D. Cal. Jan. 8, 2010) .........................................8, 12

*Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949 (N.D. Cal. 2019) ..............................15, 16

*Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 1718139 (N.D. Cal. Apr. 29, 2016) ......................2, 8, 12

*Tumampos v. Cathay Pac. Airways Ltd.*, 2017 WL 10443170 (N.D. Cal. June 30, 2017) .....................10

*United States* ex rel. *Integra Med Analytics LLC v. Providence Health & Servs.*,
     2019 WL 3282619 (C.D. Cal. July 16, 2019) ....................................................................3, 5, 10, 18

*United States* ex rel. *Integra Med. Analytics LLC v. Providence Health & Servs.*,
     2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) ...................................................................................10

*United States* ex rel. *Mei Ling v. City of Los Angeles*, 2019 WL 6971061
     (C.D. Cal. Oct. 2, 2019) ...........................................................................................................7, 12

*United States* ex rel. *Silbersher v. Valeant Pharms. Int'l, Inc.*,
     445 F. Supp. 3d 393 (N.D. Cal. 2020) ...................................................................................2, 11, 18

*United States Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966) .......................................................1, 6

*Virginian R. Co. v. United States*, 272 U.S. 658 (1926) ........................................................................15

*Yong v. INS*, 208 F.3d 1116 (9th Cir. 2000) .........................................................................................17

**STATUTES**

28 U.S.C. § 1291 ......................................................................................................................................6

28 U.S.C. § 1292 .......................................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 1 ..........................................................................................................................3, 13, 19

1    **I.    INTRODUCTION**

2          On December 11, 2020, the Court issued a 76-page Order (Dkt. 135) denying in their entirety

3    Defendants' motions to dismiss this False Claims Act (FCA) case. At the conclusion of oral argument,

4    the Court, after noting that discovery was stayed pending a decision on the motions, remarked: "If I

5    deny the motion[s], then I'll open discovery and we'll set a schedule and get it all done." (Dkt. 116 at

6    56:16-19.) Accordingly, in the same Order in which it denied Defendants' motions, the Court set a

7    Case Management Conference for the following month and directed the parties to submit a proposed

8    schedule for proceeding with the case. (Dkt. 135 at 76.)

9          Conspicuously absent from the 76-page Order was any indication that the Court, in working

10   through the public disclosure issues, had any inclination to put this action on hold so that the Ninth

11   Circuit might decide whether to accept an interlocutory appeal—a step that is reserved for "rare

12   circumstances," is committed to the district court's unfettered, unreviewable discretion to grant or

13   deny, and which "quite frequently" is summarily denied by the Ninth Circuit even in those exceptional

14   cases in which the district court grants permission to seek it. *James v. Price Stern Sloan, Inc.*, 283 F.3d

15   1064, 1067 n.6 (9th Cir. 2002).

16         Defendants nevertheless ask the Court to take the extraordinary step of certifying its Order for

17   interlocutory appeal because Defendants' motions presented "'difficult' questions . . . which required

18   the Court to 'grapple' with the impact of the 2010 amendments to the FCA." (Mot. at 1 (*citing*

19   Dkt. 135 at 32-33).) But interlocutory review is "not intended merely to provide review of difficult

20   rulings in hard cases." *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). Instead,

21   Defendants bear the heavy burden of establishing that the Order presents a "controlling question of

22   law as to which there is substantial ground for difference of opinion and that an immediate appeal

23   from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

24         Defendants have failed to demonstrate that any ground for difference of opinion as to the

25   public disclosure bar issues here is "substantial." Defendants point primarily to this Court's

26   disagreement with *United States* ex rel. *Silbersher v. Valeant Pharms. Int'l, Inc.*, 445 F. Supp. 3d 393

27   (N.D. Cal. 2020) ("*Valeant*")—specifically, with the *Valeant* court's interpretation of the phrase

28                                              - 1 -

"Federal . . . hearing." But as courts in this district have recognized, because an interlocutory appeal is an "exceptional" case, "it would not warrant a § 1292(b) appeal simply because another district court reached a different decision in a broadly similar case." *Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 1718139, at \*4 (N.D. Cal. Apr. 29, 2016). Defendants' arguments as to the purportedly "substantial" ground for difference of opinion as to whether patent prosecution documents are "news media" or "Federal reports" fare no better, which the Court's clear rejection of the various nonbinding and inapposite cases cited by Defendants demonstrates. (Dkt. 135 at 33-43.)

Defendants have also failed to show that an interlocutory appeal would be likely to materially advance the ultimate termination of this litigation. This action has been pending for nearly three years, and now that it is past the pleadings stage, this action can be ready for trial within the next 18 months. An interlocutory appeal, which would certainly take at least one year and could very well take two years or longer, would unnecessarily delay the case beyond the expected trial date absent such an appeal. An interlocutory appeal would also not result in the ultimate termination of the case because the Court's public disclosure bar rulings are correct and in all likelihood will be affirmed. But even in the unlikely event of a reversal, Relator is an original source under the statute, and the parties would find themselves two years later litigating that issue (also possibly to an appeal), plus any additional issues that Defendants may later decide to interject. This is why the rules contemplate a single appeal after final judgment, instead of the piecemeal cycles of litigation and appeal that Defendants urge. The Court should therefore deny Defendants' request for certification and set a schedule that allows the case to move forward expeditiously. *See* Fed. R. Civ. P. 1.

The Court should also deny Defendants' fallback request for a stay pending the Ninth Circuit's decisions in *Valeant* and *United States* ex rel. *Integra Med Analytics LLC v. Providence Health & Servs.*, 2019 WL 3282619 (C.D. Cal. July 16, 2019). Defendants concede that, although *Valeant* and *Integra* also deal with aspects of the public disclosure bar, it is quite possible the Ninth Circuit's resolution of those cases will have no bearing on this Court's public disclosure rulings. (Mot. at 9.) And it is highly unlikely that, even if the *Valeant* and *Integra* decisions do touch on public disclosure issues addressed by this Court, they would require the Court to revisit its Order and revise its rulings, particularly since

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO
CERTIFY ORDER FOR IMMEDIATE APPEAL AND FOR STAY

CASE NO. 3:18-CV-03018-JCS

1   neither of those cases deal with the specific questions that Defendants seek to certify here, *i.e.*,

2   whether "information reported by the PTO on its public Patent Application Information Retrieval

3   website ('PAIR') is a 'Federal report,'" or whether "information published on the public version of

4   PAIR qualifies as 'news media.'" (Mot. at 1.) And neither deal with the original source issue, which

5   would then have to be decided, even assuming for the sake of argument that *Valeant* and *Integra* lead

6   to directly applicable, adverse decisions. Defendants' request for a stay pending the *Valeant* and

7   *Integra* decisions should therefore be denied.

8   **II.     BACKGROUND**

9           Relator filed his initial Complaint on May 22, 2018 (Dkt. 1), and a First Amended Complaint

10  ("FAC") on January 22, 2019 (Dkt. 12). The Allergan Defendants filed a motion to dismiss the FAC

11  on June 14, 2019 (Dkt. 63), and the Adamas Defendants filed a motion to dismiss on June 21, 2019

12  (Dkt. 68). On December 19, 2019, the Court heard oral argument on the motions to dismiss (*see* Dkt.

13  111), and on December 11, 2020, the Court issued a 76-page order denying the motions (Dkt. 135)

14  (the "Order"). The Court concluded that the "disclosures in the patent prosecution history" were "not

15  made through one of the channels specified in the current version of the public disclosure bar, which

16  therefore does not bar Relator's claims." (Dkt. 135 at 46.) Because the Court concluded that the public

17  disclosure bar had not been triggered, it did not reach the question of whether Relator is an original

18  source under the statute. (*Id.* at 46 n.17.)

19          With respect to the question of whether the disclosure of the patent prosecution documents at

20  issue was made through one of the three channels specified in the FCA, the Court thoroughly

21  addressed each of Defendants' arguments in turn.

22          First, as to whether the documents constitute Federal reports, the court observed "it is

23  undisputed that patent prosecution is an *ex parte* administrative proceeding in which the Government

24  is not a party." (Dkt. 135 at 33.) Following the Supreme Court's instruction from *Schindler Elevator*

25  *Corp. v. U.S.* ex rel. *Kirk*, 563 U.S. 401 (2011), that the FCA must be read as an "integrated whole,"

26  and applying well-established rules of statutory construction, the Court concluded that "the limitation

27  Congress added to romanette (i) of the public disclosure bar in 2010 would be all but eviscerated as to

28                                                          - 3 -

1    any federal administrative matter if the Court were to adopt the broad reading of 'Federal report' urged

2    by Defendants, as doing so would result in an interpretation under which *any* federal proceeding with a

3    public docket – regardless of whether or not the Government was a party – would become a

4    permissible channel that could trigger the public disclosure bar." (Dkt. 135 at 33-34 (emphasis in

5    original).) The Court rejected Defendants' "reliance on a handful of cases in which courts purportedly

6    found that comparable materials were 'reports' for the purposes of the FCA," explaining that those

7    cases, most of which applied the pre-2010 version of the public disclosure bar and were thus

8    inapposite, were also readily distinguishable because the documents at issue in those cases differed

9    markedly from the patent prosecution documents at issue here. (*Id.* at 36-40.)

10       Next, the Court addressed Defendants' contention that "patent prosecution histories published

11   on PAIR are not only 'reports' under the FCA but also 'news media'" simply because they are

12   available on the Internet. (Dkt. 135 at 41.) The Court declined to rely on the handful of mostly

13   unpublished district court cases cited by Defendants, none of which attempted to ascertain the ordinary

14   meaning of the term "news media" or to analyze the text of the statute. Instead, the Court agreed with

15   the approach set forth by Judge Gutierrez in *United States* ex rel. *Integra Med Analytics LLC v.*

16   *Providence Health & Servs.*, 2019 WL 3282619 (C.D. Cal. July 16, 2019) ("*Integra I*"). The Court

17   concluded that "[c]ertainly, docket sheets such as PACER and PAIR do not fall within the meaning of

18   the term 'news media' as it is ordinarily used." (Dkt. 135 at 43.) The Court further determined that, "as

19   Judge Gutierrez recognized in his discussion of PACER, interpreting 'news media' to include a public

20   docket such as PAIR would be contrary to Congress's intent when it amended the FCA's public

21   disclosure bar in 2010, as it would nullify the limitation Congress added to romanette (i) for the same

22   reasons set forth above with respect to the term 'Federal report.'" (*Ibid.*) The Court thus concluded

23   that the documents at issue were not disclosed by the "news media." (*Ibid.*)

24       The Court then turned to a contention that "neither set of Defendants argued in the original

25   motion papers," namely, that "the alleged fraud was disclosed in a 'Federal . . . hearing'" within the

26   meaning of the statute. (Dkt. 135 at 43-44.) The Court rejected that argument and "respectfully

27   disagree[d] with the court's reasoning in *Valeant*." (*Id.* at 44.) The Court observed that the *Valeant*

28

- 4 -

1  court's interpretation of "Federal . . . hearing" is in "direct conflict with what Congress intended when

2  it amended the public disclosure bar in 2010." (*Ibid.*) The Court further noted that "the *Valeant* court's

3  interpretation of the term 'Federal . . . hearing' . . . results in . . . virtually total nullification of the

4  language that Congress added to romanette (i) of the public disclosure bar in 2010 as applied to any

5  federal proceeding." (*Id.* at 44-45.) The Court therefore concluded that the patent prosecution history

6  at issue in this case is not a Federal hearing under the current version of the statute. (*Id.* at 46.)

7       Having concluded that the public disclosure bar does not require dismissal of Relator's claims,

8  the Court turned to an analysis of whether Relator had stated a valid claim against Defendants under

9  the FCA. The Court concluded that Relator had adequately alleged false claims under theories of

10  promissory fraud as well as implied certification (Dkt. 135 at 63-71); that Relator adequately alleged

11  facts showing materiality (*id.* at 71-73); and that Relator adequately alleged scienter (*id.* at 73-74).

12       The Court did not indicate anywhere in its 76-page Order that it had any uncertainty regarding

13  its public disclosure rulings or other conclusions. Nor did the Court suggest that it believed the

14  extraordinary step of an interlocutory appeal was warranted to address any of the questions presented.

15  Accordingly, the Court denied Defendants' motions in their entirety; set a Case Management

16  Conference for January 15, 2021; and directed the parties to propose a schedule for the case.

17  (Dkt. 135.) The Court subsequently rescheduled the Case Management Conference for February 5,

18  2021, to coincide with the hearing on the instant motion. (*See* Dkt. 141.)

19  **III.    ARGUMENT**

20      **A.    The Court Should Decline to Certify the Order for Interlocutory Appeal**

21          **1.    Interlocutory Appeal Is Reserved for Rare Circumstances**

22       In general, an appellate court should not review a district court ruling until after entry of final

23  judgment. *See* 28 U.S.C. § 1291. Because interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is "a

24  departure from the normal rule that only final judgments are appealable," the statute "therefore must

25  be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

26  Interlocutory appeal is reserved for "rare circumstances," *ibid.*, and is to be "applied sparingly and

27  only in exceptional cases." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025 (9th Cir. 1981), *cause*

28  

- 5 -

1  *dismissed sub nom. Arizona v. U.S. Dist. Court for the Dist. of Arizona*, 459 U.S. 961 (1982), *and aff'd*

2  *sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983). Use of immediate interlocutory

3  appeals is "not intended merely to provide review of difficult rulings in hard cases." *United States*

4  *Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966).

5        Section 1292(b) gives the trial court discretion to certify a non-final decision for interlocutory

6  review, but only if all of the following statutory elements are met: (1) "the order involves a controlling

7  question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an

8  immediate appeal from the order may materially advance the ultimate termination of the litigation." 28

9  U.S.C. § 1292(b). The party pursuing the interlocutory appeal "bears the burden of establishing

10  § 1292(b)'s narrowly construed elements." *United States ex rel. Mei Ling v. City of Los Angeles*, 2019

11  WL 6971061, at *2 (C.D. Cal. Oct. 2, 2019) (*citing Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475

12  (1978)).

13        The district court's decision to certify an order for interlocutory appeal is entirely

14  discretionary; thus, "[e]ven when all three statutory criteria are satisfied, district court judges have

15  'unfettered discretion' to deny certification." *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, at *2 (N.D.

16  Cal. Jan. 20, 2016) (*quoting Brizzee v. Fred Meyer Stores, Inc.*, 2008 WL 426510, at *3 (D. Or. Feb.

17  13, 2008)). The district court's certification decision is unreviewable. *See Exec. Software North Am.,*

18  *Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1550 (9th Cir. 2008), *overruled on other*

19  *grounds by Cal. Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

20  Moreover, "[e]ven where the district court makes such a certification, the court of appeals nevertheless

21  has discretion to reject the interlocutory appeal," which it does "quite frequently." *James*, 283 F.3d at

22  1068 n.6 (citation omitted).

23       **2.**     **The Public Disclosure Issues are not Controlling Questions of Law**

24        It is not at all clear the first prong of the Section 1292(b) inquiry is satisfied. While the public

25  disclosure questions identified by Defendants are questions of law, they are not dispositive. A

26  resolution in Defendants' favor might not advance the litigation at all because Relator could still be

27  deemed an original source under the statute (a question the Court did not reach). In that circumstance,

28  - 6 -

1  we would find ourselves exactly where we are now, after more than a year of additional delay. Thus,

2  these questions should not be deemed "controlling," and Defendants' request for interlocutory appeal

3  can be denied on this basis alone.

### 3. Defendants Have Failed to Establish Substantial Ground for Difference of Opinion as to the Public Disclosure Bar

6  "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts

7  must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629,

8  633 (9th Cir. 2010). Courts may find that substantial grounds for difference of opinion exist where

9  "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the

10  point, if complicated questions arise under foreign law, or if novel and difficult questions of first

11  impression are presented." *Ibid.* (citation omitted). Courts may find substantial ground for difference

12  of opinion as to novel issues "where reasonable jurists might disagree on an issue's resolution, not

13  merely where they have already disagreed." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th

14  Cir. 2011). However, "it would not warrant a § 1292(b) appeal simply because another district court

15  reached a different decision in a broadly similar case." *Tsyn*, 2016 WL 1718139, at *4 (*citing*, *inter

16  alia*, *Spears v. Wash. Mut. Bk. FA*, 2010 WL 54755, at *3 (N.D. Cal. Jan. 8, 2010) ("[T]hat one district

17  court came to a different conclusion on the same issue is insufficient to establish a substantial ground

18  for difference of opinion.")). Just because "reasonable minds may differ" or "courts are reaching

19  different conclusions" as to the resolution of a particular issue, it does not necessarily follow that the

20  requirement of a "substantial" basis for a difference of opinion is satisfied. *DeLuca v. Farmers Ins.

21  Exch.*, 2019 WL 4260437, at *7 (N.D. Cal. Sept. 9, 2019); *see also Couch*, 611 F.3d at 633 ("just

22  because counsel contends that one precedent rather than another is controlling does not mean there is

23  such a substantial difference of opinion as will support an interlocutory appeal").

24  Defendants have failed to establish substantial grounds for difference of opinion regarding any

25  of the three public disclosure questions they identify.

26  First, with respect to the Court's determination that the patent prosecution documents at issue

27  do not constitute "Federal reports" under the current version of the public disclosure bar, Defendants

28

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO
CERTIFY ORDER FOR IMMEDIATE APPEAL AND FOR STAY

CASE NO. 3:18-CV-03018-JCS

claim that the Court "departed from significant prior precedent." (Mot. at 7.) Defendants do not cite

any of this supposedly "significant" precedent in their Motion, with good reason. As the Court

explained at length in the Order, Defendants rely "on a handful of cases in which courts purportedly

found that comparable materials were 'reports' for the purposes of the FCA," yet "one of the cases

cited by Defendants . . . did not address the 'report' channel of disclosure at all," and the remaining

cases, "most of which apply the pre-2010 version of the public disclosure bar," concern other types of

documents that are readily distinguishable from the patent prosecution materials at issue here. (Dkt.

135 at 36-40.) Undeterred, Defendants cite back to their motion to dismiss briefing to contend that

"*Schindler* and its progeny provide ample authority" for their position. (Mot. at 8 (*citing* Dkt. 94 at 5-

7.) In doing so, Defendants completely ignore this Court's thorough analysis and application of the

principles articulated in *Schindler* to the precise question of the meaning of "Federal report" as used in

the current version of the public disclosure bar. (Dkt. 135 at 33-36.) In short, Defendants have failed to

identify substantial grounds for difference of opinion as to whether documents publicly available on

PAIR constitute "Federal reports" under the public disclosure bar, and they merely regurgitate the

same arguments the Court has already rejected.

    Second, with respect to the Court's conclusion that the patent prosecution documents do not

constitute "news media" under the public disclosure bar, Defendants contend that the Court departed

from the "'general consensus' of the federal courts as to the broad meaning of the term 'news media.'"

(Mot. at 7, *citing United States* ex rel. *Integra Med. Analytics LLC v. Providence Health & Servs.*,

2019 WL 6973547, at *4 (C.D. Cal. Oct. 8, 2019) ("*Integra II*").) While it is correct to say, as this

Court noted, that "numerous cases" have in the past interpreted the term "news media" broadly, it is

wrong to contend that anything resembling a "general consensus" exists for Defendants' expansive

definition of news media as encompassing everything available on the Internet. Notably, in *Integra*,

Judge Gutierrez appears to have been the first jurist to "attempt[] to define the ordinary meaning of the

term 'news media' or to otherwise ground their interpretation in the statutory text," *Integra I*, 2019

WL 3282619, at *13, and Defendants have pointed to no decision post-*Integra* that has rejected Judge

Gutierrez's analysis. And, as Judge Gutierrez noted, most of the prior cases to address the issue "did

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO            CASE NO. 3:18-CV-03018-JCS
CERTIFY ORDER FOR IMMEDIATE APPEAL AND FOR STAY

1   not undertake their own independent analysis of the meaning and scope of the news media provision

2   and instead simply cited to previous decisions of other courts (that themselves often contained sparse

3   analysis) with little additional explanation." *Ibid.* In other words, there has been no difference of

4   opinion, much less a substantial difference of opinion, when it comes to interpreting "news media"

5   based on its ordinary meaning and consistent with the overall text of the statute. *Cf. Tumampos v.*

6   *Cathay Pac. Airways Ltd.*, 2017 WL 10443170, at *2 (N.D. Cal. June 30, 2017) (concluding that the

7   court's "plain language analysis" of a statutory issue had "not been addressed squarely in any of the

8   decisions cited by the parties," and that "[t]he Court's analysis was new, and disputed by Defendant,

9   but this is not the type of extraordinary issue requiring interlocutory review").

10   Furthermore, Defendants have failed to demonstrate that a substantial basis for a difference of

11   opinion exists as to either of the Court's core conclusions on the particular question presented, *i.e.*,

12   whether the patent prosecution documents fall within the definition of "news media." Specifically, the

13   Court concluded that "[c]ertainly, docket sheets such as PACER and PAIR do not fall within the

14   meaning of the term 'news media' as it is ordinarily used," and that "interpreting 'news media' to

15   include a public docket such as PAIR would be contrary to Congress's intent when it amended the

16   FCA's public disclosure bar in 2010, as it would nullify the limitation Congress added to romanette

17   (i)." (Dkt. 135 at 43.) Defendants have not pointed to a single case that disagrees with either of these

18   fundamental conclusions, and Defendants cannot credibly argue that substantial ground exists that

19   warrants the exceptional step of certifying them for interlocutory review. Thus, although *Integra* has

20   been certified for interlocutory appeal, and while there may be room for disagreement as to the precise

21   scope and contours of the definition of "news media," none of the authorities cited by Defendants

22   demonstrate a substantial basis for a difference of opinion as to the specific question for which

23   Defendants seek certification: "Whether information published on the public version of PAIR qualifies

24   as 'news media' as that term is used in Section 3730(e)(4)(A)(iii)." (Mot. at 1.) The Court's statutory

25   construction is manifestly correct, and Defendants do not provide a persuasive reason to doubt it.

26   Third, with respect to "Federal hearing," Defendants rely on an argument they never made in

27   their motion to dismiss papers, *i.e.*, that the patent prosecution history published on PAIR constitutes a

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO
CERTIFY ORDER FOR IMMEDIATE APPEAL AND FOR STAY

CASE NO. 3:18-CV-03018-JCS

1   Federal hearing under romanette (ii) of the statute. Defendants argue that this Court's disagreement

2   with *Valeant* demonstrates that "reasonable jurists . . . have already disagreed," and therefore

3   substantial ground for difference of opinion exists. (Mot. at 7.) Defendants are correct that this Court's

4   careful analysis of the statutory text and structure led it to disagree with the court's reasoning in

5   *Valeant*. (Dkt. 135 at 43-45.) Yet, Defendants point to no case other than *Valeant* that has taken such

6   an expansive view of the phrase "Federal hearing," and courts in this district have held that "it would

7   not warrant a § 1292(b) appeal simply because another district court reached a different decision in a

8   broadly similar case." *Tsyn*, 2016 WL 1718139, at *4; *Spears*, 2010 WL 54755, at *3; *DeLuca*, 2019

9   WL 4260437, at *7.

10          Accordingly, Defendants have failed to establish that substantial grounds for difference of

11  opinion exist that warrant the extraordinary measure of immediate interlocutory review of this Court's

12  public disclosure rulings.

13                    **4.  Defendants Have Failed to Establish That Interlocutory Review of the Order
                           Will Materially Advance the Ultimate Termination of this Litigation**

14

15          There are "no set criteria a court is required to consider when evaluating whether an

16  interlocutory appeal will materially advance the litigation. Courts apply pragmatic considerations to

17  determine whether certifying non-final orders will materially advance the ultimate termination of the

18  litigation." *Beeman v. Anthem Prescription Mgmt., Inc.*, 2007 WL 8433884, at *2 (C.D. Cal. Aug. 2,

19  2007). Courts often find that the "likelihood of delay" weighs against certifying an interlocutory

20  appeal. *United States ex rel. Mei Ling v. City of Los Angeles*, 2019 WL 6971061, at *5 (C.D. Cal. Oct.

21  2, 2019). "[E]ven when a trial date is not set, an appeal can still unnecessarily delay the termination of

22  the litigation." *Ibid.* (*citing Andrews v. Plains All Am. Pipeline, L.P.*, 2017 WL 9831401, at *5 (C.D.

23  Cal. Nov. 7, 2017)). Courts have counseled that an interlocutory appeal must be "likely to materially

24  speed the termination of the litigation." *Allen v. ConAgra Foods, Inc.*, 2019 WL 1466889, at *3 (N.D.

25  Cal. Feb. 6, 2019) (*quoting Ambrosio v. Cogent Commc'ns, Inc.*, 2016 WL 777775, at *3 (N.D. Cal.

26  Feb. 29, 2016)).

27

28                                                    - 10 -

1    Relator filed his initial Complaint in this case in May 2018, and the action has been pending

2    now for close to three years. An interlocutory appeal to the Ninth Circuit, which could take "upwards

3    of two years to be resolved," would only serve to "further protract" this case. *Mei Ling*, 2019 WL

4    6971061, at *5. Consistent with its duty to secure the "just, speedy, and inexpensive determination" of

5    the action, Fed. R. Civ. P. 1, the Court is poised to enter a scheduling order and set a trial date at the

6    upcoming case management conference. To that end, Relator has proposed a case schedule with an

7    anticipated trial date in July 2022, approximately 18 months from the date of the case management

8    conference. (*See* Dkt. 144 at 12-15.) Under the proposed schedule, it is likely that trial would take

9    place prior to the Ninth Circuit's resolution of an interlocutory appeal. The anticipated delay resulting

10   from an interlocutory appeal thus counsels against certification here. *See, e.g.*, *Shurance v. Planning

11   Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) (denying an interlocutory appeal that

12   "probably could not be completed" before the scheduled trial date); *Andrews v. Plains All Am.

13   Pipeline, L.P.*, 2017 WL 9831401, at *5 (C.D. Cal. Nov. 7, 2017) (denying certification because "if an

14   interlocutory appeal were to move forward, then trial in this action would likely be delayed").

15   Defendants claim that "[a]bsent a stay, the parties will soon begin a very burdensome

16   discovery process." (Mot. at 8.) Discovery in this case will be no more burdensome than in other

17   similar cases. Defendants are also familiar with discovery in these types of cases in general and are

18   well-equipped to respond to the specific discovery issues they raise. The patent issues in this case have

19   already been subject to discovery in connection with prior proceedings, and the first phase of the

20   discovery here will simply require Defendants to produce what has already been produced in past

21   litigation. Moreover, many of the documents relating to Defendants' scienter and scheme to protect the

22   chemical compound (memantine HCl) from generic competition—such as internal market erosion

23   analyses—would likely have already been produced in *In re Namenda IR Antitrust Litig.*, 1:15-cv-

24   07488-CM (S.D.N.Y.).[1] Finally, the district court in *In re: Restasis Antitrust Litigation*, Case No.

---

25

26   [1] Although that case involved different anticompetitive misconduct by Allergan through "product
     hopping" from the "immediate release" version of Namenda to the extended-release version (Namenda
27   XR) relevant here, internal company documents relating to Allergan's plans to protect the molecule from
     generic competitors that were produced in the prior antitrust action would also be relevant here.

28                                                          - 11 -

1   1:18-md-02819 (E.D.N.Y.), which involves allegations that Allergan fraudulently obtained patents to

2   protect their dry eye drug monopoly, required Allergan to engage in discovery at least as burdensome,

3   and likely far more so, than the anticipated discovery in this case, without interlocutory appeals or

4   unnecessary stays. Allergan is thus already quite familiar with identifying and producing the same

5   types of documents that will also be required in this case.

6          Defendants also assert there may be significant discovery required of government agencies,

7   such as their purchases or reimbursements for Namenda XR and Namzaric. But drug utilization,

8   purchase, and reimbursement data are already maintained by the relevant paying agencies. Exporting

9   such data for disclosure will not be unduly burdensome, especially since the Government is the

10  primary beneficiary that stands to recover billions of dollars in healthcare funds wasted as a result of

11  Defendants' unlawful misconduct. Such minor burden on the Government (especially compared with

12  the corresponding benefit) cannot justify delaying this case unnecessarily for years, while foreclosing

13  any possibility of settlement in the meantime. Indeed, the Government's purchase data and payment

14  decisions are relevant in virtually every *qui tam* action, and if Defendants' argument were accepted,

15  that potentially could cause many *qui tams* to be delayed through interlocutory appeals and stays.

16         In sum, an interlocutory appeal in this action is likely to significantly delay a case that has been

17  pending for nearly three years, and which in all likelihood could proceed to trial sooner than an

18  interlocutory appeal would be completed. In any event, the Court's Order is well-reasoned, correct,

19  and therefore likely to be upheld on appeal. Certification therefore is unlikely to materially advance

20  the termination of this case, and Defendants' motion should be denied.

21         **B.      The Court Should Decline to Stay This Action Pending an Interlocutory Appeal**

22         Whether to stay this case pending an interlocutory appeal is a matter committed to this Court's

23  sound discretion. "A stay is not a matter of right, even if irreparable injury might otherwise result."

24  *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (*quoting Virginian R. Co. v. United States*, 272 U.S.

25  658, 672 (1926)). "It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is

26  dependent upon the circumstances of the particular case.'" *Nken*, 556 U.S. at 433-34 (*quoting*

27  *Virginian R. Co.*, 272 U.S. at 672-673). The Supreme Court has articulated a four-factor test for

28

- 12 -

1   whether a stay should issue in any particular case: "(1) whether the stay applicant has made a strong

2   showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured

3   absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in

4   the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434. These factors are

5   measured under a "'general balancing' or 'sliding scale' approach, under which 'a stronger showing of

6   one element may offset a weaker showing of another.'" *Stiner v. Brookdale Senior Living, Inc.*, 383 F.

7   Supp. 3d 949, 953 (N.D. Cal. 2019) (*quoting Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir.

8   2011)).

9       As to the showing of likelihood of success on the merits, "if a movant is unable to show a

10  'strong likelihood of success,' then the movant must at least demonstrate that the appeal presents a

11  'substantial case on the merits,' or that there are 'serious legal questions' raised." *Stiner*, 383 F. Supp.

12  at 953. Because courts in the Ninth Circuit take a "sliding scale" approach, a movant who can only

13  meet this "lower threshold" under the first factor "must then demonstrate that the balance of hardships

14  under the second and third factor tips *sharply* in the movant's favor." *Ibid.* (emphasis added); *Flo &*

15  *Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4397175, at *3 (C.D. Cal. June 8, 2015). The moving

16  party "bears the burden of showing that the circumstances justify" a stay. *Stiner*, 383 F. Supp. 3d at

17  953.

18      Here, Defendants do not even attempt to argue they have a strong likelihood of success on the

19  merits. At most, Defendants contend that "there are serious questions on the merits here" which make

20  a stay appropriate. (Mot. at 11.) For the same reasons that Defendants have failed to establish there is

21  substantial ground for difference of opinion on the specific public disclosure questions at issue,

22  Defendants have not shown that there is a "serious question" on the merits warranting a stay. *See*

23  Section III(A)(3), *supra*, at 7-10. This factor weighs against the issuance of a stay.

24      As to the second and third factors, under the sliding scale approach, Defendants are required

25  not just to demonstrate "irreparable injury," but that the balance of harms tips "sharply" in their favor.

26  They have failed to do so. Defendants speculate that discovery will be particularly expansive and

27  burdensome in this case, but there is no reason to believe discovery here will be any more burdensome

28

- 13 -

1  to Defendants than discovery in other complex litigation of its type, with which Defendants are

2  familiar and to which they are well-equipped to respond. On the other hand, a significant delay will

3  harm not just Relator, but the Federal and state governments on whose behalf this action is brought. As

4  the State of California recognized in its statement of interest (Dkt. 133), this action has major

5  importance for government health programs, not only because the government stands to recover

6  billions of dollars in fraudulent overcharges, but also because this action may set an important

7  precedent that would discourage similar overcharges resulting from the misuse of fraudulently-

8  obtained patents. Consequently, the significant delay Defendants seek could deprive the government

9  of a significant and much-needed financial recovery and delay the development of law that could help

10  curb drug-pricing abuse and expand affordable access to healthcare.

11  For the same reason, the public interest factor weighs against a stay. The public has a

12  significant interest in prompt resolution of cases, like this one, that "may help lower the price of

13  medicine and the cost of health insurance." (Dkt. 133 at 3.) A lengthy stay of this action pending an

14  interlocutory appeal, which would likely last at least a year, and possibly even two years or more,

15  would not just delay trial, but would also be likely to significantly delay the chances of a settlement,

16  which is the means by which most cases are resolved. For example, Allergan settled *In re Namenda IR*

17  *Antitrust Litig.* for $750 million before trial, *see* 1:15-cv-07488 (S.D.N.Y.), at Dkt. 947—avoiding the

18  need for any appeals whatsoever. Had there been an interlocutory appeal or a stay in the *Namenda IR*

19  *Antitrust Litig.* when the defendants initially lost their motions to dismiss, that case would likely not

20  have settled and would probably still be in litigation today. Thus, in the event this Court certifies its

21  Order for interlocutory appeal, it should exercise its discretion to decline to stay the case.

22  **C.  The Court Should Decline to Stay This Action Pending the Resolution of the Ninth Circuit Appeals in the *Valeant* and *Integra* Cases**

23  The pending appeals in *Valeant* and *Integra* do not warrant a stay of this case. In determining

24  whether to exercise its discretion to "stay proceedings pending disposition of another case that could

25  affect the outcome," the Court "must balance the length of the delay against the justifications for the

26  stay." *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *4–5 (N.D. Cal. Sept. 16,

27  2008) (*citing Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000)). Specifically, the Court should weigh

28

- 14 -

"(1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Phan v. Transamerica Premier Life Ins. Co.*, 2020 WL 5576358, at *2 (N.D. Cal. Sept. 17, 2020) (*quoting CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). The moving party bears the burden of establishing a need for a stay. *Ibid.* (*citing Clinton v. Jones*, 520 U.S. 681, 708 (1997)). A stay of indefinite duration requires the moving party to demonstrate a "pressing need." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Defendants request an indefinite stay of this action pending the Ninth Circuit's resolution of the *Valeant* and *Integra* appeals. They do not articulate any "pressing need" for this stay; their only argument is that "the Ninth Circuit's analysis in both cases may be of valuable assistance to this Court in considering Defendants' public-disclosure-bar defenses," and that "[b]oth cases will clarify the scope and meaning of the public disclosure bar after the 2010 amendments and could alter this Court's analysis of the issues presented by Defendants' motions to dismiss." (Mot. at 12-13.) Yet Defendants have acknowledged there is a very good chance the Ninth Circuit's decisions in *Valeant* and *Integra* will not affect this Court's analysis of the specific public disclosure bar questions at issue here. (*See* Mot. at 9 ("it is possible the Ninth Circuit will decide *Valeant* without addressing one of the core controlling questions of law presented here," and that "the Ninth Circuit's *Integra* decision will announce a rule for private websites, but not Government ones"[2]).) Thus, while the Ninth Circuit's forthcoming decisions undoubtedly will address the scope of the public disclosure bar in general, it is highly speculative whether either of those decisions will require the Court to reverse any of its key conclusions, such as whether patent prosecution documents fall within one of the enumerated channels of the statute. To the contrary, the likely outcome is that the Ninth Circuit's resolution of *Valeant* and *Integra*—even if they provide additional clarity around the public disclosure bar—will not change the

---

[2] *Integra* is also unlikely to lead to a directly applicable holding, even if the Ninth Circuit reverses, because the issue relating to nullification of Congress's 2010 amendments to 31 U.S.C. § 3730(e)(4)(A)(i) is not squarely presented in *Integra* as it is here.

- 15 -

1    outcome in this case. A stay is thus unlikely to "simplify[]" the specific "questions of law" this Court

2    has already thoroughly addressed. *Phan*, 2020 WL 5576358, at *2 (*quoting CMAX*, 300 F.2d at 268).

3         Moreover, given Defendants' view that "the Ninth Circuit will weigh in on both cases within a

4    reasonable time period" (Mot. at 13), any burden to Defendants of proceeding with discovery between

5    now and then will be relatively low. In the unlikely event that *Valeant* or *Integra* requires this Court to

6    revisit its public disclosure rulings, the Court could do so in short order. The hardship or inequity

7    Defendants might face in being required to go forward at this juncture is therefore minimal. By

8    contrast, Relator and the federal and state governments have an interest in the prompt recovery of the

9    overcharges incurred by them, and a stay of even a few months would delay any such recovery, with

10   little prospect that such a delay would have made make any difference at all. The orderly course of

11   justice weighs in favor of continuing to move this case forward, rather than staying it indefinitely.

12        The most efficient course, therefore, is to proceed expeditiously with this matter, consistent

13   with the principle underlying Rule 1 of the Federal Rules of Civil Procedure that provides for the "just,

14   speedy, and inexpensive" adjudication of Relator's claims.

15   **IV.   CONCLUSION**

16        For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

17

18

19

20

21

22

23

24

25

26

27

28

RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO
CERTIFY ORDER FOR IMMEDIATE APPEAL AND FOR STAY

CASE NO. 3:18-CV-03018-JCS

Dated: January 13, 2021

Respectfully submitted,

**HERRERA KENNEDY LLP**

By: */s/ Nicomedes Sy Herrera*
       Nicomedes Sy Herrera

Nicomedes Sy Herrera (State Bar No. 275332)
Laura E. Seidl (State Bar No. 269891)
**HERRERA KENNEDY LLP**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 422-4700
Email: NHerrera@HerreraKennedy.com
      LSeidl@HerreraKennedy.com

Shawn Kennedy (State Bar No. 218472)
Bret D. Hembd (State Bar No. 272826)
**HERRERA KENNEDY LLP**
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Email: SKennedy@HerreraKennedy.com
      BHembd@HerreraKennedy.com

Tejinder Singh (*Pro Hac Vice*)
**GOLDSTEIN & RUSSELL, P.C.**
7475 Wisconsin Avenue, Suite 850
Bethesda, Maryland 20814
Telephone: (202) 362-0636
Email: TSingh@GoldsteinRussell.com

Warren T. Burns (*Pro Hac Vice*)
Russell Herman (*Pro Hac Vice*)
Mallory Biblo (*Pro Hac Vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Email: WBurns@BurnsCharest.com
      RHerman@BurnsCharest.com
      MBiblo@BurnsCharest.com

Christopher J. Cormier (*Pro Hac Vice*)
**BURNS CHAREST LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, D.C. 20016
Telephone: (202) 577-3977
Email: CCormier@BurnsCharest.com

*Attorneys for Plaintiff-Relator Zachary Silbersher*

- 17 -